UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SANDI D. JACKSON, individually, and as next friend and parent of KEELY A. JACKSON, a minor child under the age of eighteen years old,<br><br>    Plaintiffs,<br><br>v.<br><br>FRANK NIX, SUSIE YONKERS, JEANNIE COLE, AMY BURKE, SHANNON ATKINSON, KIM WILSON, TERESA TOWERY, AMY NIX, KERI CRESS, VIOLA MILLER, all sued in their individual capacity,<br><br>    Defendants. | No. 3:06-0182<br>JUDGE ECHOLS |

## MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss The Second Amended Complaint (Docket Entry No. 60) and Defendants' Motion For Summary Judgment (Docket Entry No. 64), to which Plaintiff Keely Jackson, through her next friend and parent, Sandi D. Jackson, responded in opposition.[1]

In a prior Memorandum and Order, the Court afforded Plaintiff Keely Jackson (hereinafter "Plaintiff") an opportunity to re-plead her complaint to state factual allegations to support any constitutional claim or claims she may have against the named Defendants, who are employees of the Tennessee Department of Children's Services ("DCS") and who are sued in their individual capacities. (Docket Entry Nos. 50 & 51.) Plaintiff filed her Second Amended Complaint on

---

[1]The Court previously dismissed Sandi Jackson's own claims as time-barred. The Court also dismissed Defendant Viola Miller from the lawsuit. (Docket Entry Nos. 50 & 51, Memorandum and Order.)

    Remaining Plaintiff Keely Jackson, acting through her mother and next friend, now concedes that Defendant Teresa Towery should be dismissed from the case. (Docket Entry No. 78, Plaintiff's Memorandum at 6.) Accordingly, Defendant Towery is hereby dismissed from the action.

February 9, 2007. (Docket Entry No. 53.) Defendants then moved to dismiss the Second Amended Complaint and for summary judgment.

## I. FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

The following paragraphs constitute the facts as stated in the Second Amended Complaint:

4. <u>Facts of the Case</u>. On March 10, 2004, the Plaintiff, Keely Jackson [Jackson] was seized from her mother, Sandi Jackson, without a hearing, by the Defendants. After a hearing before the Juvenile Court of Sumner County on March 12, 2004, Jackson was placed in the custody of the Department of Children's Services from March 10, 2004 until March 20, 2005. During this time, Jackson was first placed in a foster home run by Laurenda Wisenhut until December 23, 2004. Jackson remained in the custody of the State of Tennessee Children's Services until released to her mother on March 7, 2005.
5. <u>Factual Violations of Due Process</u>. The Defendants in this case, individually and in concert with each other, violated the Plaintiff's substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution by subjecting her to the following unnecessary harm by seizing her from the care of her mother and by failing to adequately supervise her while she was in foster care:
   a. Allowing the Plaintiff's foster care parents to expose her to unwelcomed religious views which conflicted with that of her family's.
   b. Exposing the Plaintiff to an individual whom she had accused of sexually abusing her, and thus allowing her to be sexually assaulted again while in foster care.
   c. Failure to adhere (sic) to allow her mother to develop a relationship with her, by denying her adequate time with her mother.
   d. Failure to adequately provide for her medical needs, when it was apparent she had been physically injured.
   e. Failure to investigate injuries received by the Plaintiff while in foster care.
   f. Causing her loss of societal relations by removing her from her mother's care, by failing to adequately investigate the circumstances leading to the removal and failing to verify critical information before seizing her.
6. The Defendants knew or should have known that the unnecessary harm was occurring to the Plaintiff while in their care, supervision and control. Their failure to adequately monitor and supervise the Plaintiff's environment amounted to a deliberate indifference to the welfare of the Plaintiff. Further, their failure to adequately investigate the circumstances leading to the Plaintiff's seizure and removal from the care of her mother amounted to deliberate indifference to the welfare of the Plaintiff.

(Docket Entry No. 53, Second Amended Complaint at 3-4.)

**II. DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

In evaluating the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 167 L.Ed.2d 929, 940 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The factual allegations supplied must be enough to show a plausible right to relief. Id. at 940-942. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

Defendants assert that, despite pleading for the third time, Plaintiff's Second Amended Complaint ("the Complaint") fails to state a claim against them. The Complaint does not make a single specific allegation of direct involvement as to any Defendant. Aside from the style of the case and a listing of the Defendants sued, the Complaint does not mention any Defendant by name or link any concrete factual allegations to any particular Defendant. Moreover, Plaintiff failed to comply with Anderson v. Creighton, 483 U.S. 635 (1983), because she did not plead with particularity a concrete constitutional right which has been violated rather than an "abstract" constitutional principle, and she did not allege specific facts to support the alleged constitutional violation. Defendants contend they are entitled to qualified immunity, and Plaintiff failed to plead facts showing that Defendants are not entitled to qualified immunity. See Rippy v. Hattaway, 270 F.3d 416, 424 (6th Cir. 2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) for proposition that government officials performing discretionary functions are generally shielded from damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known).

3

The Complaint is deficient for the reasons stated by the Defendants. Even giving the Complaint a liberal construction under Federal Rule of Civil Procedure 8 and taking the alleged facts in a light most favorable to the Plaintiff, it is still not possible to tell what specific acts or omissions of each named Defendant are alleged to have violated Plaintiff's Fourteenth Amendment substantive due process rights. The Complaint speaks only in very general terms and does not provide either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. See Twombly, 167 L.Ed.2d at 944; Scheid, 859 F.2d at 436.

Even if the Court assumes that the Complaint states a Fourteenth Amendment claim against each named Defendant, see Meador v. Cabinet for Human Resources, 902 F.2d 474 (6th Cir. 1990) (holding child placed in state-regulated foster home has substantive due process right to personal safety), Plaintiff has not carried her burden to allege sufficient facts to indicate that state actions were objectively unreasonable in light of the clear constitutional right alleged, thus precluding Defendants' qualified immunity defense. See Williams v. Pollard, 44 F.3d 433, 435 (6th Cir. 1995). In the prior Memorandum, quoting Achterhof v. Selvaggio, 886 F.2d 826, 831 (6th Cir. 1989), the Court allowed the Plaintiff a chance to re-plead all of the factual allegations necessary to sustain a conclusion that the Defendants violated clearly established law. Unfortunately, Plaintiff has not done so. Thus, Defendants are entitled to dismissal of the Complaint under Rule 12(b)(6).

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Alternatively, the Court holds that, even if the Complaint could survive a Rule 12(b)(6) motion to dismiss, Defendants are still entitled to summary judgment on the issue of qualified immunity based on the factual record submitted to the Court in connection with the summary judgment motion. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).

The evidence shows that Keely Jackson was three years old when the matters giving rise to this suit occurred. She is the minor daughter of Sandi Jackson and Mitch Lanphere. DCS workers

4

in Robertson County investigated allegations of sexual abuse against Mr. Lanphere and determined the allegations to be unfounded.

During that investigation, a collateral source informed DCS of her concern that Ms. Jackson, a Nurse Practitioner, was over-medicating Keely with adult prescription sedatives and laxatives, and that Ms. Jackson was writing the prescriptions herself. This report prompted a DCS investigation in Sumner County into the allegations against Ms. Jackson. DCS workers sent medical releases signed by Ms. Jackson to doctors' offices where Ms. Jackson indicated Keely had received treatment. None of the doctors had records of treating Keely. (Docket Entry No. 70, Cole Aff. at ¶ 8.) DCS then asked Ms. Jackson to supply proof that Keely's prescriptions were written by a doctor, but she did not do so, and the documents she did produce conflicted with her earlier statements. DCS called a Child and Family Team Meeting to determine whether Keely should be taken into DCS custody. Ms. Jackson and her attorney attended the meeting. (Docket Entry No. 67, Atkinson Aff.; Docket Entry No. 69, Burke-Salyers Aff.; Docket Entry No. 70, Cole Aff.; Docket Entry No. 72, Mix Aff.; Docket Entry No. 73, Nix Aff.; Docket Entry No. 74, Towery Aff.)

DCS wanted a psychological assessment of Keely to find out whether the medication her mother was giving her was appropriate and whether Keely had been trained to make sexual abuse allegations against Mr. Lanphere, and DCS wanted Ms. Jackson to have a psychological evaluation. There was no appropriate family member available for an emergency placement of Keely because Ms. Jackson lived in close proximity to her mother and the paternal grandmother lived with Mr. Lanphere. DCS was also concerned that there were additional sexual abuse allegations pending against Mr. Lanphere. At the conclusion of the long and contentious Child and Family Team Meeting, DCS employees made a decision to remove Keely on an emergency basis based on concerns that Ms. Jackson was improperly medicating Keely, that Ms. Jackson was a flight risk, and that there was no appropriate relative with whom to place the child. Although Plaintiff disputes

5

many of the details concerning the two investigations leading up to this decision,[2] there is no dispute that DCS employees exercised their discretion to take Keely into protective state custody on March 10, 2004, following the investigations.

DCS filed a petition to adjudicate Keely a dependent and neglected child (Docket Entry No. 66-2), and a preliminary hearing was held on March 12, 2004. The Juvenile Court ordered Keely taken into state custody. (Docket Entry No. 66-3.)

The evidence shows that, shortly after Keely was taken into state custody, she fell playing on a slide and injured a tooth. DCS workers immediately took Keely to a dentist. (Atkinson Aff. ¶ 11; Cress Aff. ¶ 6; Nix Aff. ¶ 8.) During visitations with Ms. Jackson, Keely would exhibit normal scrapes and bruises. Keely was very articulate for her age and she could always account for any bruises or scrapes. She was taken to a doctor on a regular basis. Before visits, Ms. Cress asked Keely if she felt safe or had any problems and Keely never said anything that caused concern. Keely would roll her eyes when Ms. Jackson was present. Ms. Jackson said it was caused by some kind of psychosis that Keely suffered. Keely was taken to the Vanderbilt Center for Excellence, but the psychologist stated there was no psychosis. Keely then saw an eye doctor, who stated there was nothing medically wrong with her. Keely stopped the behavior shortly after entering state custody. (Cress Aff. ¶¶ 8-10.)

A referral was made to DCS on May 25, 2004 regarding bruises and marks observed on Keely. The matter was fully investigated, no evidence was found to substantiate physical abuse of Keely while in state custody, and the file was closed on June 29, 2004. (Docket Entry No. 68, Blanchard Aff. ¶¶ 3-4.)

---

[2]Many of the record citations provided by Plaintiff do not support the positions she takes (Docket Entry No. 80, Ex. 2; Ex. 8 at 107-108; Ex. 10 at 603, 606, 623, 636, 648, 666; Ex. 14, 1327; Ex. 16 at 37) or the transcript pages cited are simply not included in the record for the Court to review. (Id. Ex. 4 at 31; Ex. 8 at 245, 246, 263; Ex. 10 at 610, 628, 697, 698, 763; Ex. 9 at 527; Ex. 14 at 1316; "Ex. ___" at 1060.)

Keely was nervous about visiting Mr. Lanphere at first, but eventually she would run to greet him when he arrived. Keely and Mr. Lanphere had unsupervised visitation beginning in July 2004. After these visits began, Keely reported that prior to coming into DCS custody, Mr. Lanphere had sexually abused her. Pending an investigation into this allegation, unsupervised visitation with Mr. Lanphere was suspended. Keely then disclosed that she had lied about the sexual abuse allegations, a full investigation of Mr. Lanphere cleared him of any wrongdoing, and DCS resumed his unsupervised visitation. (Cress Aff. at ¶¶ 13-16.)

DCS sets minimum visitation for a parent whose child is in state custody of four hours per month. Ms. Jackson started visitations with Plaintiff at two hours per week. She was then permitted to increase her visitations with Plaintiff to four hours per week and then to six hours per week. Ms. Jackson also had scheduled telephone conversations with Plaintiff two to three times a week. (Id. at ¶ 17.)

While Keely was in state custody, her foster parents took her to church with them. Ms. Jackson objected because she did not want her child exposed to the religious views of the foster parents, which were different than her own. After Ms. Jackson complained, DCS worker Keri Cress told the foster parents to stop taking Keely to church with them. (Docket Entry No. 71, Cress Aff. ¶ 11.) Yet, Keely wanted to go to church with her foster family. (Docket Entry No. 75, Wilson Aff. ¶ 10.) On May 13, 2004, Ms. Jackson signed a letter permitting Keely to go to church with her foster family, but asking that the foster parents not teach Keely their religious beliefs. (Id. ¶ 12; Ex. 66-1.)

In determining whether a state employee is shielded from civil liability due to qualified immunity, the Sixth Circuit typically employs a two-step analysis: "'(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.'" Swiecicki v. Delgado, 463 F.3d 489, 497-498 (6th Cir. 2006) (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310-311 (6th Cir. 2005) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Sixth Circuit also occasionally performs a third

7

step in the qualified immunity analysis. See Estate of Carter, 408 F.3d at 311 n.2. When used, the third step requires inquiry into "'whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" Swiecicki, 463 F.3d at 497-498 (quoting case omitted). Since Saucier the Supreme Court has continued to use the two-step approach to qualified immunity, but the Sixth Circuit has noted "the three-step approach may in some cases increase the clarity of the proper analysis." Estate of Carter, 408 F.3d at 311 n.2. If the case at issue is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable, then the Sixth Circuit collapses the second and third prongs in an effort to avoid duplicative analysis. Swiecicki, 463 F.3d at 498. Throughout the analysis, the burden is on the Plaintiff to show that the Defendants are not entitled to qualified immunity. See Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).

Plaintiff claims that Defendants violated her substantive due process rights by (1) seizing her without an adequate investigation, (2) allowing her to be exposed to unwelcome religious beliefs while in foster care, (3) exposing her to an individual whom she had accused of sexually molesting her, (4) causing her a loss of societal relations with her mother, and (5) failing to investigate her injuries and provide for her medical needs. Even assuming that each of these claimed rights was clearly established in 2004, Plaintiff did not produce sufficient evidence in opposition to summary judgment to show that the actions taken by these named Defendants were objectively unreasonable in light of Plaintiff's clearly established constitutional rights. See Swiecicki, 463 F.3d at 497-498.

Plaintiff's limited factual showing does not controvert Defendants' evidence that they acted in an objectively reasonable manner in: conducting an adequate investigation before taking Plaintiff into emergency custody following a Child and Family Team Meeting attended by Plaintiff's mother and her attorney; in permitting Plaintiff to continue attending church services with her foster family at Plaintiff's request and with her mother's written permission; in investigating sexual abuse allegations against Mr. Lanphere which proved to be unfounded, especially in light of Plaintiff's

admission that she lied about the allegations; in providing Plaintiff with more hours of visitation with her mother than are usually allowed under state policy; and in providing Plaintiff with needed medical and dental care. Accordingly, the Court concludes that all of the named Defendants are entitled to qualified immunity for their actions connected with Plaintiff's case. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects all but the plainly incompetent and those who knowingly violate the law).

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss The Second Amended Complaint (Docket Entry No. 60) will be GRANTED. Alternatively, Defendants' Motion For Summary Judgment (Docket Entry No. 64) will be GRANTED on the ground that Defendants are entitled to qualified immunity for their actions. The case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE